# IN THE COURT OF APPEALS OF IOWA

No. 15-1459
Filed June 29, 2016

**SHANNON BREEDEN and LAURA HOCHMUTH,**
        Plaintiffs-Appellants,

**vs.**

**IOWA DEPARTMENT OF CORRECTIONS,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Arthur E. Gamble,

Judge.


        Juvenile offenders appeal the district court's denial of their petitions for

judicial review, which requested their earned time be recalculated after their

resentencing pursuant to *State v. Lyle*, 854 N.W.2d 378 (Iowa 2014).

**REVERSED AND REMANDED.**


        Gordon E. Allen, Johnston, for appellants.

        Thomas J. Miller, Attorney General, and William A. Hill, Assistant Attorney

General, for appellee.


        Heard by Vogel, P.J., and Doyle and Bower, JJ.

**VOGEL, Presiding Judge.**

Shannon Breeden and Laura Hochmuth appeal the district court's denial of their petition for judicial review, which sought to change the rate at which the Iowa Department of Corrections (IDOC) calculates their earned-time credit under Iowa Code section 903A.2 (2015). Because we disagree with the district court's interpretation of the applicable code sections, we reverse the district court's judicial review ruling and remand for the entry of an order directing the IDOC to recalculate Breeden's and Hochmuth's tentative discharge date using the earned-time rate found in section 903A.2(1)(a).

**I. Background Facts and Proceedings.**

Both Breeden and Hochmuth were resentenced pursuant to the Iowa Supreme Court's holding in *State v. Lyle*, 854 N.W.2d 378, 398 (Iowa 2014), as they were both juveniles at the time of the commission of their crimes.[1] At resentencing both juvenile offenders had the mandatory minimum term removed from their sentences, leaving only the term of years. They then filed a petition for declaratory ruling with the IDOC, asking the department to recalculate their tentative discharge date using the earned-time rate found in Iowa Code section 903A.2(1)(a).[2] If Breeden's earned-time credit remains as initially calculated under the rate contained in section 903A.2(1)(b), her tentative discharge date for

---

[1] In 2003, Breeden was convicted of attempted murder and sentenced to serve twenty-five years in prison with the seventy-percent mandatory minimum sentence. In 1997, Hochmuth was convicted of second-degree kidnapping, first-degree robbery, and second-degree robbery. Hochmuth was sentenced to two consecutive twenty-five-year terms with a concurrent ten-year term of incarceration with the applicable mandatory minimums. At both resentencings the mandatory minimums were removed, but the term of years remained the same.

[2] This code section was revised by enactments in 2015 and 2016. *See* 2016 Iowa Legis. Serv. S.F. 2189, § 119 (West); 2015 Iowa Acts ch. 65, § 3. However, these amendments do not affect the issue at hand.

her sentence is November 23, 2023. If Hochmuth's earned-time credit remains as initially calculated under the rate contained in section 903A.2(1)(b), her tentative discharge date for her sentence is July 26, 2040. If the tentative discharge dates are recalculated under section 903A.2(1)(a), it would significantly accelerate both offenders' discharge dates.

In December 2014, the IDOC denied the request for recalculation, stating, "[T]he method of sentence calculation used by the IDOC is mandated by law." The IDOC stated that although the minimum sentences were eliminated, "both offenders were still sentenced to an offense identified under section 902.12" and offenders who are convicted of an offense listed in section 902.12 must have their earned time calculated "as a category 'B' sentence—which accumulates earned-time credit at a rate of 15/85 days of credit for every day served." The IDOC concluded, "There is no statutory authorization for the IDOC to apply a different rate."

Breeden and Hochmuth then filed a petition for judicial review in the district court under Iowa Code section 17A.19, seeking a review of the IDOC's denial of their request to have their tentative discharge dates recalculated using the earned-time rate found in section 903A.2(1)(a), rather than (b). The parties filed with the district court a joint stipulation of the facts related to the underlying convictions and sentences for Breeden and Hochmuth and the IDOC's current calculation of the offenders' tentative discharge dates. After briefing and a hearing, the district court denied the petition for judicial review, concluding the legislative history of sections 903A.2 and 902.12 indicated the legislature intended individuals serving sentences for certain forcible felonies under section

902.12 to remain subject to the slower rate in section 903A.2(1)(b) regardless of whether the minimum term under section 902.12 was imposed. The court also concluded the application of the slower rate to juvenile offenders does not offend the Iowa Constitution.

Breeden and Hochmuth filed a "Motion For New Trial (Rehearing)," alleging the court's interpretation of Iowa Code section 903A.2 is contrary to the statute's express language and contrary to the supreme court's holding in *Lyle*. After a hearing, the district court denied the motion, concluding, "The determining factor in calculating the rate of accumulation of earned time is whether the court sentenced the offender for a crime listed in section 902.12." Breeden and Hochmuth appeal.

## II. Scope and Standard of Review.

This is an action brought under Iowa Code chapter 17A seeking to review the IDOC's decision on the earned-time rate applicable to Beeden's and Hochmuth's sentences. Section 17A.19(10) governs the court's review of an agency's decision. *See Hawkeye Land Co. v. Iowa Utils. Bd.*, 847 N.W.2d 199, 207 (Iowa 2014). The district court acts in an appellate capacity when reviewing agency decisions, and "[i]n turn, '[w]e review the district court's decision to determine whether it correctly applied the law.'" *Id.* (second alteration in original) (citations omitted). "We must apply the standards set forth in section 17A.19(10) and determine whether our application of those standards produce[s] the same result as reached by the district court." *Id.* (alteration in original) (citation omitted).

The issue at hand is the agency's interpretation of section 902.12 and section 903A.2. We find no support for the proposition that the agency has been granted interpretive authority over these code sections, and therefore, we review the agency's decision under section 17A.19(10)(c) for correction of errors at law, giving no deference to the agency's interpretation and freely substituting our judgment for that of the agency. *See Mycogen Seeds v. Sands*, 686 N.W.2d 457, 464 (Iowa 2004).

## III. Earned-Time Rate.

Earned-time credit for inmates committed to the custody of the IDOC is calculated as provided in section 903A.2(1), which provides in part,

> For purposes of calculating the amount of time by which an inmate's sentence may be reduced, inmates shall be grouped into the following two sentencing categories:
>     a. Category "A" sentences are those sentences which are not subject to a maximum accumulation of earned time of fifteen percent of the total sentence of confinement under section 902.12. . . .  An inmate of an institution under the control of the department of corrections who is serving a category "A" sentence is eligible for a reduction of sentence equal to one and two-tenths days for each day the inmate demonstrates good conduct and satisfactorily participates in any program or placement status identified by the director to earn the reduction. . . .
>         . . . .
>     b. Category "B" sentences are those sentences which are subject to a maximum accumulation of earned time of fifteen percent of the total sentence of confinement under section 902.12. An inmate of an institution under the control of the department of corrections who is serving a category "B" sentence is eligible for a reduction of sentence equal to fifteen eighty-fifths of a day for each day of good conduct by the inmate.

Iowa Code section 902.12 provides:

> A person serving a sentence for conviction of the following felonies, including a person serving a sentence for conviction of the following felonies prior to July 1, 2003, shall be denied parole or

work release unless the person has served at least seven-tenths of the maximum term of the person's sentence:

      1. Murder in the second degree in violation of section 707.3.

      2. Attempted murder in violation of section 707.11.

      3. Sexual abuse in the second degree in violation of section 709.3.

      4. Kidnapping in the second degree in violation of section 710.3.

      5. Robbery in the first or second degree in violation of section 711.2 or 711.3.

      6. Vehicular homicide in violation of section 707.6A, subsection 1 or 2, if the person was also convicted under section 321.261, subsection 4, based on the same facts or event that resulted in the conviction under section 707.6A, subsection 1 or 2.

The IDOC argues, and the district court agreed, that interpreting these two statutes together results in those convicted of offenses listed in section 902.12 subjected to the slower rate found in section 903A.2(1)(b)—"fifteen eighty-fifths of a day for each day of good conduct by the inmate"—irrespective of whether the minimum sentence in section 902.12 has been imposed upon that inmate. In support, the IDOC refers us to the case of *State v. Iowa District Court*, 616 N.W.2d 575, 579 (Iowa 2000), where the supreme court held:

> Iowa Code section 902.12 provides that persons convicted of specified forcible felonies "shall serve one hundred percent[3] of the maximum term of the person's sentence and shall not be released on parole or work release," except as otherwise provided in section 903A.2. Section 903A.2 in general allows inmates to reduce their sentences for good behavior, earning a reduction of sentence of one day for each day of good conduct and up to five additional days per month for satisfactory participation in designated activities. *See* Iowa Code § 903A.2(1)(a). Inmates sentenced pursuant to section 902.12, however, are limited to a total reduction of only 15% of their sentences. *See id.* § 903A.2(1)(b). The practical effect of these two statutes is to require that *a defendant convicted of a forcible felony listed in section 902.12* must serve at least 85% of his sentence. *See State v. Phillips*, 610 N.W.2d 840, 841 (Iowa 2000).

---

[3] This code section has been subsequently amended to provide for a minimum sentence of seventy percent, rather than one hundred percent. *See* 2003 Iowa Acts ch. 156, § 12.

(Emphasis added.); *see also Phillips*, 610 N.W.2d at 841 ("Applying sections 902.12 and 903A.2 together, *a person who has committed one of the specified felonies* will be required to serve at least eighty-five percent of the maximum term of the sentence before being eligible for parole or work release." (emphasis added)). While the language in both *Iowa District Court*, 616 N.W.2d at 579, and *Phillips*, 610 N.W.2d at 841, seems to support the IDOC's position that the focus for the application of the earned-time credit should be on the offense committed, neither case dealt with the issue of what earned-time rate is applicable to an offender who is not sentenced to the mandatory minimum sentence under section 902.12 but has committed an offense enumerated in section 902.12. *See Iowa Dist. Ct.*, 616 N.W.2d at 577 (determining whether the mandatory minimum contained in section 902.12 applies to a juveniles convicted of certain forcible felonies); *Phillips*, 610 N.W.2d at 841 (analyzing whether section 902.12 was unconstitutional on various grounds). For that analysis, we turn to *State v. Lowery*, 822 N.W.2d 739, 741–42 (Iowa 2012).

In *Lowery*, our supreme court was faced with the question of what earned-time rate should be applied when an inmate has the section 902.12 mandatory minimum sentence removed by a commutation of the governor. 822 N.W.2d at 739–40. There, the supreme court stated it was the imposition of the mandatory minimum that

> affected the rate at which [Lowery] could accumulate earned time which would provide for a discharge before he served his full sentence. *Because his sentence had a mandatory minimum, he accumulated earned time at a slower rate than if his sentence had been for a term of years with no mandatory minimum*, and he could accumulate no more than fifteen percent of his total sentence. *See* Iowa Code § 903A.2(1)(a). The net effect of the two statutes meant

that Lowery would have been eligible for consideration for parole or work release after he had served seventy percent of his sentence (approximately seventeen and a half years). Assuming he accumulated all the earned time allowed under the statute, he would be eligible for discharge after serving eighty-five percent of his sentence (about twenty-one and a fourth years). *In contrast, if Lowery had been sentenced to a term of twenty-five years with no mandatory minimum, he would have been entitled to accrue earned time at a faster rate.* Assuming he had accumulated all the earned time he could, he would have been entitled to release after about eleven and a third years and would have been considered for parole annually.

*Id.* at 741–42 (emphasis added). Thus, based on the language used in *Lowery*, it is the imposition of the mandatory minimum sentence under section 902.12 that controls the applicable rate for earned-time credit, not the crime the offender committed.[4]

The State asserts the holding in *Lowery* should be restricted to apply only to cases where the governor commutes the mandatory minimum sentence. We disagree because the *Lowery* holding is also consistent with how we interpret the language of the two statutes at issue. Section 903A.2(1)(b) does not say category "B" sentences are those sentences being served for crimes listed in section 902.12. Rather, section 903A.2(1)(b) categorizes a sentence as a "B" sentence when the *sentence* is "subject to a maximum accumulation of earned

---

[4] The supreme court in *Lowery* ultimately determined the inmate was entitled to the faster earned-time rate under section 903A.2(1)(a) from the date of the governor's commutation forward and the slower rate under section 903A.2(1)(b) from the date of the inmate's original sentencing until the commutation. 822 N.W.2d at 743. However, this split remedy occurred to give effect "to the governor's intention expressed in his commutation order that Lowery not be released immediately." *Id.* This is not the case here because Breeden's and Hochmuth's original sentences were unconstitutional based on the supreme court's ruling in *Lyle*, 854 N.W.2d at 398. Their original sentences were vacated as if they never existed, and the new sentences imposed at the time of resentencing in 2014 are considered to be the sentence imposed from the beginning. *See Vacate*, Black's Law Dictionary (10th ed. 2014) ("To nullify or cancel; make void; invalidate.").

time of fifteen percent of the total sentence of confinement under section 902.12." The focus of the language in section 903A.2(1)(b) is not the *offense* committed but the *sentence* being served.

Section 902.12 provides a minimum term of imprisonment for offenders convicted of certain enumerated crimes. However, when Breeden and Hochmuth were resentenced under *Lyle*, the application of section 902.12 was removed from their sentences. Despite being convicted of an offense listed in section 902.12, Breeden's and Hochmuth's *sentences* are no longer subject to the minimum term of years in section 902.12, and thus, their *sentences* are no longer "subject to a maximum accumulation of earned time of fifteen percent of the total sentence of confinement under section 902.12." Iowa Code § 903A.2(1)(b).

We acknowledge that the supreme court's ruling in *Lyle* did not address the application of the earned-time credit for those juvenile offenders who were to be resentenced. But *Lyle* specifically stated, "The holding in this case does not address the mandatory sentence of incarceration imposed under the statutory sentencing schema *or any other issues relating to the sentencing schema.*" 854 N.W.2d at 404 n.10 (emphasis added). Our holding does not rely on *Lyle* or rely on a finding that the imposition of the slower rate under Iowa Code section 903A.2(1)(b) on juvenile offenders is unconstitutional. We simply hold, based on the supreme court's ruling in *Lowery* and our statutory analysis of the two applicable code sections, the slower rate in section 903A.2(1)(b) is only applicable to those offenders who are serving minimum terms of incarceration under Iowa Code section 902.12. When that minimum term is removed from an

offender's sentence, either pursuant to a resentencing under *Lyle* or some other sentence modification such as a governor's commutation, the earned-time must be recalculated based on the faster rate found in section 903A.2(1)(a).

We therefore reverse the district court's ruling on judicial review and remand for the entry of an order directing the IDOC to apply the faster earned-time rate found in section 903A.2(1)(a) to Breeden's and Hochmuth's sentences when recalculating their tentative discharge dates.

**REVERSED AND REMANDED.**