# IN THE COURT OF APPEALS OF IOWA

No. 14-0451
Filed December 24, 2014

**STATE OF IOWA,**
       Plaintiff-Appellee,

**vs.**

**WILLIAM RICHARD CLAYTON,**
       Defendant-Appellant.
_____

Appeal from the Iowa District Court for Bremer County, Gregg R. Rosenbladt, Judge.

Defendant appeals the district court order denying his motion to correct an illegal sentence. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kyle P. Hanson, Assistant Attorney General, and Kasey Wadding, County Attorney, for appellee.

Considered by Danilson, C.J., Tabor, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**SCOTT, S.J.**

Defendant William Clayton appeals the district court order denying his motion to correct an illegal sentence. He claims the requirement in Iowa Code section 902.12 (2011) that he serve seventy percent of his sentences for attempted murder constitutes cruel and unusual punishment. He also claims he is entitled to the same protections as juvenile offenders because he was nineteen years old when the offenses occurred. Clayton has not shown the sentences in this case constitute cruel and unusual punishment. We affirm the district court decision denying his motion to correct an illegal sentence.

### I.    Background Facts & Proceedings

On October 30, 2012, Clayton and Jeremiah Mumford committed armed robbery at the Maynard Savings Bank in Fayette County. They led officers on a high-speed chase into Bremer County. Clayton and Mumford were armed with handguns and AK-47s. During the chase shots were fired at the pursuing officers. State Trooper Mark Domino and Sumner Police Chief Dennis Cain were injured by gunshots. After Clayton and Mumford crashed their vehicle, they fled on foot. They were eventually captured by officers. They admitted to shooting at law enforcement officers.

This case involves the charges against Clayton in Bremer County.[1] He was charged with eight counts of attempted murder, five counts of terrorism, six counts of intimidation with a dangerous weapon, eight counts of assault on a

---

[1] Separate charges were filed against Clayton for his activities in Fayette County. *State v. Clayton*, No. 13-1771, 2014 WL 5862075, at * 1 (Iowa Ct. App. Nov. 13, 2014). He pled guilty to one count of first-degree robbery and two counts of attempted murder, and was sentenced to a total of fifty years in prison. *Id.*

peace officer with the intent to inflict serious injury, and eight counts of assault on a peace officer while displaying a dangerous weapon.

Clayton entered into a plea agreement in which he agreed to plead guilty to eight counts of attempted murder, in violation of section 707.11; six counts of intimidation with a dangerous weapon, in violation of section 708.6; eight counts of assault on a peace officer with intent to inflict serious injury, in violation of section 708.3A(1); and eight counts of assault on a peace officer while displaying a dangerous weapon, in violation of section 708.3A(2). The State agreed to dismiss the remaining charges.

The parties agreed to recommend Clayton be sentenced to (1) twenty-five years in prison on each count of attempted murder, with two of the sentences to run consecutively and all others to run concurrently, for a total of fifty years with a seventy percent mandatory minimum; (2) ten years in prison on each count of intimidation with a dangerous weapon, with two of the sentences to run consecutively and all of the others to run concurrently with each other, but consecutive to the fifty-year sentence, for a total of twenty years; and (3) five years in prison on each of the other counts, all to run concurrently with each other, but consecutive to the other sentences.

Clayton entered his guilty pleas in open court on June 17, 2013. During the plea colloquy Clayton stated he had acted in concert with Mumford by driving the vehicle while Mumford shot at officers. The court accepted his pleas. The court sentenced Clayton in accordance with the sentencing recommendations in the plea agreement. In total, Clayton was sentenced to seventy-five years in prison, with a thirty-five year mandatory minimum sentence. The court stated,

"This is the type of behavior that we need to indicate to the public that is going to result in a long period of incarceration simply because it's just extremely dangerous and way outside of the conduct that is going to be tolerated or permitted."

On October 10, 2013, Clayton filed a motion to correct an illegal sentence, claiming his sentences constituted cruel and unusual punishment. He pointed out that he was nineteen years old when the offenses occurred and stated he had substance abuse issues. He claimed the mandatory minimum sentence violated the Federal and Iowa Constitutions because it was grossly disproportionate to the offense. The district court denied the motion, finding "there were no illegalities in the sentences imposed." Clayton now appeals.

## II. Standard of Review

Although we ordinarily review a claim of an illegal sentence for the correction of errors at law, when the claim is that the sentence is unconstitutional our review is de novo. *State v. Lyle*, 854 N.W.2d 378, 382 (Iowa 2014). We engage in an independent evaluation of the totality of the circumstances as shown by the entire record. *State v. Tyler*, 830 N.W.2d 288, 291 (Iowa 2013). An illegal sentence may be corrected at any time. Iowa R. Crim. P. 2.24(5).

## III. Cruel and Unusual Punishment

On appeal, Clayton contends the seventy percent mandatory minimum sentence for attempted murder violates the prohibition against cruel and unusual punishment found in the Eighth Amendment of the United States Constitution and article I, section 17 of the Iowa Constitution. He claims the mandatory minimum sentences for attempted murder are grossly disproportionate to the

offenses in his particular case.  Clayton points out he was nineteen years old when the offenses occurred and will be required to serve at least thirty-five years before he is eligible for release.

Under section 902.12, a person serving a sentence for attempted murder, in violation of section 707.11, "shall be denied parole or work release unless the person has served at least seven-tenths of the maximum term of the person's sentence."  Clayton pled guilty to eight counts of attempted murder, in violation of section 707.11.  An attempt to commit murder is a class "B" felony, and the prescribed sentence is confinement for no more than twenty-five years.  Iowa Code §§ 707.11, 902.9(2).  Thus, the mandatory minimum sentence for a conviction for attempted murder is seventeen and one-half years.  Clayton was sentenced to two consecutive sentences for attempted murder, giving him a mandatory minimum sentence of thirty-five years.

In considering a proportionality claim under the Eighth Amendment, we look at the following factors: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions.  *Solem v. Helm*, 463 U.S. 277, 292 (1983).  This three-step analysis is applied in considering a gross proportionality challenge to a particular defendant's sentence.  *State v. Oliver*, 812 N.W.2d 636, 648 (Iowa 2012).

The threshold determination is whether Clayton's mandatory minimum sentences "leads to an inference of gross disproportionality" to his offenses.  *Id.* at 650.  "The preliminary test involves a balancing of the gravity of the crime against the severity of the sentence."  *State v. Bruegger*, 773 N.W.2d 862, 873

(Iowa 2009). We consider these general principles when determining whether a defendant's sentence is grossly disproportionate to an offence: (1) the legislature is entitled to substantial deference in setting penalties for various crimes; (2) a sentence will rarely be so grossly disproportionate as to satisfy the threshold inquiry; (3) recidivist offenders may receive longer sentences; and (4) a sentence may be grossly disproportionate based on the unique features of a case. *Oliver*, 812 N.W.2d at 650-51.

We first look at the gravity of the offense. Clayton pled guilty to eight counts of attempted murder. A person commits attempted murder,

> when, with the intent to cause the death of another person and not under circumstances which would justify the person's actions, the person does any act by which the person expects to set in motion a force or chain of events which will cause or result in the death of the other person.

Iowa Code § 707.11. As the district court noted while sentencing Clayton, his conduct involved "a great, great deal of dangerous behavior including shooting at the officers and in fact injuring some of the officers." The injuries to Police Chief Cain ended his career. In looking at the balancing test, the gravity of Clayton's offenses was very high and presented a risk of death to others. *See State v. Lara*, 580 N.W.2d 783, 785 (Iowa 1998) (noting the gravity of first-degree robbery, which presented a risk of death or serious injury to persons present during the offense).

We next look at the severity of Clayton's sentence. "[C]onsecutive sentences, even if lengthy, do not constitute cruel and unusual punishment." *State v. August*, 589 N.W.2d 740, 744 (Iowa 1999). The Iowa supreme court has stated:

> August committed *two* serious crimes. The fact he will have to serve his sentences consecutively does not make these otherwise permissible sentences disproportionately severe. There is nothing cruel and unusual about punishing a person committing *two* crimes more severely than a person committing only one crime, which is the effect of consecutive sentencing.

*Id.* Furthermore, a mandatory minimum sentence does not make a sentence unconstitutional. *Id.* Here, Clayton pled guilty to eight counts of attempted murder, but his sentences on only two of the convictions were consecutive.[2] We do not find Clayton's sentence was unduly severe.

We do not find Clayton's mandatory minimum sentence of thirty-five years is grossly disproportionate, balancing the gravity of his crimes against the severity of his sentence. *See Lara*, 580 N.W.2d at 785 (finding the mandatory minimum sentence for first-degree robbery was not cruel and unusual punishment due to the risk of death or serious injury associated with the offense); *State v. Kehoe*, 804 N.W.2d 302, 311 (Iowa Ct. App. 2011) (finding life in prison was not cruel and unusual punishment for defendant convicted of first-degree murder, attempted murder, and child endangerment). We conclude Clayton has not met the threshold test to show his sentence was grossly disproportionate to his offenses. *See Oliver*, 812 N.W.2d at 650.

Although "no further analysis is necessary" because Clayton's sentence does not create an inference of gross disproportionality, we also find he has not shown the mandatory minimum sentence of seventeen and one-half years for attempted murder is out of line with the sentence imposed for other crimes in

---

[2] Based just on the charges of attempted murder, Clayton was facing up to 200 years in prison (8 counts x 25 years each), with a mandatory minimum sentence of 140 years (200 x 70%).

Iowa. *See id.* at 640, 650. Attempted murder is a class "B" felony, which has a sentence of not more than twenty-five years, similar to second-degree murder, second-degree sexual abuse, second-degree kidnapping, first-degree robbery, and homicide by vehicle while intoxicated, which are all subject to the same mandatory minimum sentence requirements. Iowa Code §§ 902.9, .12. Additionally, Clayton has not shown the sentence imposed for attempted murder in Iowa is out of line with the sentences imposed for the same crime in other jurisdictions.[3] We conclude the district court properly denied his motion to correct an illegal sentence.

## IV. Pro Se Brief

In a pro se brief, Clayton claims that recent Iowa Supreme Court cases concerning the sentencing of juveniles should be applied to him because he was nineteen years old when the offenses occurred. *See Lyle*, 854 N.W.2d at 404; *State v. Null*, 836 N.W.2d 41, 76-77 (Iowa 2013); *State v. Pearson*, 836 N.W.2d 88, 97-98 (Iowa 2013); *State v. Ragland*, 836 N.W.2d 107, 122 (Iowa 2013). He states he was subject to the same "immaturity, impetuosity, and poor risk assessment" as juvenile offenders. *See Pearson*, 836 N.W.2d at 95. Juvenile offenders are not subject to a mandatory minimum sentence without a sentencing hearing where the court finds it is warranted after considering appropriate factors. *Lyle*, 854 N.W.2d at 403-04.

The court has specifically stated, however, that these cases involving juvenile offenders do not apply to adult offenders. *Id.* at 403.

---

[3] According to Clayton's appellate brief, a conviction for attempted murder carries a sentence of twenty years in Minnesota, twenty-five years in South Dakota, and between one to fifty years in Nebraska.

Furthermore, our holding today has no application to sentencing laws affecting adult offenders. Lines are drawn in our law by necessity and are incorporated into the jurisprudence we have developed to usher the Iowa Constitution through time. This case does not move any of the lines that currently exist in the sentencing of adult offenders.

*Id.* We conclude Clayton is not entitled to relief based on case law applicable to juvenile offenders.

We affirm the decision of the district court denying Clayton's motion to correct an illegal sentence.

**AFFIRMED.**